# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSHA M. BLISS, | : | No. 3:17cv1837 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| LABORERS INTERNATIONAL | : | |
| UNION OF NORTH AMERICA | : | |
| LOCAL 158, | : | |
| and | : | |
| ROBERT SLICK, Business Agent | : | |
| Of Laborers Local Union 158, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment seeking to dismiss the plaintiff's civil rights claims pursuant to Federal Rule of Civil Procedure 56(c). The matter has been briefed and is ripe for disposition.

## Background

Plaintiff Marsha Bliss asserts a gender-based employment discrimination claim against Defendants Laborers International Union of North America Local 158 (hereinafter "Union 158") and Robert Slick for violating Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. 1). Defendant Slick is a Business Agent for Defendant Union 158. (Doc. 15, Defs.' Stmt. Of Mat. Facts (hereinafter "Defs.' SOF") ¶ 4). In August 2011, Plaintiff Bliss became a member

of International Union of North America Local Union 1076 (hereinafter "Union 1076), a pipeline organization that provides on-the-job training for its construction employees seeking greater job opportunities within the organization. (Doc. 21, Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J.). Plaintiff Bliss received on-the-job training and experience during her 5-year tenure as a member of Union 1076. (Id.) For purposes of her sex discrimination claims, Plaintiff Bliss uses Andrew Hillard (hereinafter "Hillard") and William Hardy (hereinafter "Hardy"), both Caucasian males and fellow members of Union 1076, as her comparators.

Each time, except for once, the plaintiff reached out to Defendant Slick seeking job placements, the defendant denied the plaintiff's requests ostensibly for two reasons. (Doc. 15, Pl. Stmt. Of Mat. Facts (hereinafter "Pl. SOF") ¶ 5). First, the plaintiff was not a journeyman. (Defs.' SOF at ¶ 6). Instead, the plaintiff maintained a status as an "apprentice." (Id.) Members considered to be journeymen, according to the defendant, are qualified to receive referrals and have preference over persons listed on the "out of work list." (Id. at ¶¶16, 22). The plaintiff, as a member of Union 1076, was on the "out of work list." (Id.) Hillard and Hardy are also on this list. (Id.) The second reason the defendants refused to provide the plaintiff with job placements is because she had an invalid union book from Union 1076 that prevented her from receiving job placements from Union 158. (Id. at ¶ 9). During the same time period, however, Defendant

Union 158 provided job placements to Hillard and Hardy even though they were not journeymen and obtained their union books in the same manner as the plaintiff. (Hardy Aff. ¶ 11; Hillard Aff. ¶ 12).

After exhausting all of the appropriate administrative remedies, on October 6, 2017, the plaintiff filed a 3-count complaint against the defendants. (Doc. 1). Count 1 of the plaintiff's complaint claims that the defendants discriminated against the plaintiff on the basis of sex in violation of Title VII of the Civil Rights Act. (Id.) Count 2 of the plaintiff's complaint alleges that the defendants retaliated against the plaintiff after the plaintiff spoke out against the defendants' employment practices. (Id.) Finally, Count 3 claims that the plaintiff is entitled to punitive damages because the defendants acted with "malice" and "reckless indifference" when they refused to provide her with job placements. (Id.) On November 29, 2018, the defendants subsequently filed a motion for summary judgment seeking to dismiss Counts 1, 2, and 3 of the plaintiff's complaint. (Doc. 14). The matter has been briefed and is ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1981 for employment discrimination violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States.").

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to

admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden then shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" Walden v. St. Gobain Corp., 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) quoting Stewart v. Rutgers Univ., 120 F.3d 426, 431 (3d Cir. 1997).  "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff?  Because this 'is clearly a factual question,' Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987), summary judgment is in fact rarely appropriate in this type of case.  Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.'  Id.  See Sempier v. Johnson & Higgins, 45 F.3d 724, 732-33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved

on summary judgment')." <u>Marzano v. Computer Science Corp.</u>, 91 F.3d 497, 509-510 (3d Cir. 1996).

## Discussion

As noted above, Plaintiff Bliss alleges that Union 158 discriminated against her on the basis of sex because Union 158 gave male members of Union 1076 preferential work assignments before female members of Union 1076. (Doc. 1, ¶ 19). The defendants have responded by filing a motion for summary judgment seeking to dismiss Counts 1, 2, and 3 of the plaintiff's claim. (Doc. 14). We will discuss each of these issues in turn.

### I.    Count 1: Gender Discrimination Claim

The Civil Rights Act states that "[i]t shall be unlawful employment practice for a labor organization . . .  to . . . refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect [her] status as an . . . applicant for employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2.

The Supreme Court has established a burden shifting scheme for individual disparate treatment claims. This is known as the <u>McDonnell Douglas</u> pretext framework, which is a three-step process. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). An employee proceeding under the <u>McDonnell</u>

Douglas pretext framework bears the initial burden of proving that there is a presumption of discrimination. Id. If the employee establishes this presumption, the burden then shifts to the employer to establish a legitimate nondiscriminatory reason for its employment action. Id. If the employer meets this burden, then the burden shifts back to the plaintiff to show that the proffered reason was mere pretext for actual discrimination. Id. We will address each step of the McDonnell Douglas test in turn.

**a. Plaintiff's Presumption of Discrimination**

The first step of the McDonnell Douglas framework requires a plaintiff to establish a prima facie case in order to create a presumption of discrimination. There are three elements required to create this presumption. First, the plaintiff must prove that she is a member of a protected class. See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006). Second, she must prove that she was qualified for the job. Id. Third, the plaintiff must prove that another person, not within the protected class, was treated more favorably. Id.

The plaintiff satisfies the first element because, as a female, she is a member of a protected class: "sex" under Title VII. Id. at 540. The plaintiff satisfies the second element because she received on-the-job training through multiple pipeline jobs throughout Agent Tomasetti's tenure as a business agent

for Union 158. (Plaintiff Statement of Undisputed Facts ¶¶ 13-14). Finally, the plaintiff meets the third element because her male comparators, Hillard and Hardy, both received job placements thereby receiving more favorable treatment. (Hardy Aff. ¶ 11; Hillard Aff. ¶ 12); <u>Scheidemantle</u>, 470 F.3d at 539. Having established all three elements, Plaintiff Bliss has proven a prima facie case for employment discrimination therefore satisfying the first step of the McDonnell Douglas test.

### b. Defendant's Legitimate Nondiscriminatory Reason

Now that the plaintiff has satisfied the first step, the burden is on the defendants to establish a nondiscriminatory reason for their refusal to provide the plaintiff with job placements. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. Here, the defendants have proffered two legitimate nondiscriminatory reasons for refusing to provide the plaintiff with job placements.

First, the defendants assert that the plaintiff's union books are invalid. (Defs.' SOF at ¶ 9). Second, the defendants argue that the plaintiff was not a journeyman but instead merely maintained the status of an "apprentice." (<u>Id.</u> at 6). It is for these reasons the defendants argue that the plaintiff is not qualified to receive job placements through the Union 158 office. As a result, the defendant has proffered a legitimate nondiscriminatory reason for its refusal to provide the

plaintiff with job placements therefore satisfying the second step of the McDonnell Douglas test.

### c. Pretext for Discrimination

Now that the defendant has established legitimate nondiscriminatory reasons for its job placement decisions, the burden shifts back to the plaintiff to establish that the defendant's reasons were pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at 798.  Here, the plaintiff argues that other male Union 1076 members—who are also apprentices and obtain similar books to that of the plaintiff—received job placements during the same time period that the defendants refused to provide job placements for Plaintiff Bliss.  (Hardy Aff. ¶ 11; Hillard Aff. ¶ 12).

The plaintiff has proffered evidence that the defendants' legitimate nondiscriminatory reason could be pretext for discrimination.  This evidence calls into question the defendants' intent, therefore raising an issue of material fact sufficient to preclude summary judgment.  Chipollini, 814 F.2d at 899; see Sempier, 45 F.3d at 732-33.  Accordingly, summary judgment will not be granted with respect to Count 1.

### II.    Count 2: Retaliation Claim

The defendants also filed a motion for summary judgment seeking to dismiss Count 2, the plaintiff's retaliation claim.  Title VII's anti-retaliation

provision separately tells us that it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

Like employment discrimination claims, the <u>McDonnell Douglas</u> analysis also applies to retaliation claims. <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340–41 (3d Cir.2006). A plaintiff proceeding under this framework bears the initial burden of proving a prima facie case of retaliation. <u>Id.</u> If the employee establishes a prima facie claim for retaliation, the burden then shifts to the employer to establish a legitimate non-retaliatory reason for its conduct. <u>Id.</u> at 342. The burden then shifts back to the plaintiff to show that retaliation was the real reason for the adverse employment action. <u>Id.</u> In order to survive a motion for summary judgment in the defendants' favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. <u>Id.</u> To help us decide whether a jury could reasonably conclude that the defendant retaliated against the plaintiff, we will address each of the <u>McDonnell Douglas</u> steps in turn.

### a. Prima Facie Claim for Retaliation

To establish a prima facie case of retaliation, the plaintiff must prove: (1) she engaged in protected activity; (2) the employer took an adverse employment

action against her; and (3) a causal connection between the protected activity and the adverse employment action.  <u>Moore</u>, 461 F.3d at 340–41.

Protected activity has two separate categories.  The first category protects employees who participate in certain Title VII proceedings (the "participation clause").  <u>Slagle v. County of Clarion</u>, 435 F.3d 262, 266 (3d Cir. 2006).  The second category protects employees who oppose discrimination made unlawful by Title VII (the "opposition clause).  <u>Id.</u>

Applicable here is the participation clause because Plaintiff Bliss exercised her rights under the Pennsylvania Human Relations Act in response to the defendants' refusal to provide her with job placements.  (Doc. 1).  As a result, the first element of a retaliation claim is satisfied.  The plaintiff satisfied the second element because she is alleging that the defendants refused to provide her with job placements as a result of her speaking out against their refusal to do so.  (<u>Id.</u>)  Finally, the plaintiff has satisfied the third element because she is alleging that the defendants' refusal to hire her would have "dissuaded a reasonable worker from making . . . a charge of discrimination."  (<u>Id.</u>)  The plaintiff is alleging that she was, in fact, discouraged from opposing the defendants' employment practice.  (<u>Id.</u>)  As a result, the plaintiff has satisfied the first step of the <u>McDonnell Douglas</u> test.

### b. Defendants' Legitimate Non-retaliatory Reason

The burden is now on the defendants to establish a non-retaliatory reason for their refusal to provide the plaintiff with a job placement.  McDonnell Douglas Corp., 411 U.S. at 802.  Here, the defendants have proffered two legitimate non-retaliatory reasons for refusing to provide the plaintiff with job placements.  As stated above, the defendants assert that the plaintiff's union books are invalid and that the plaintiff was merely an "apprentice"; not a journeyman as required by Union rules.  It is for these reasons the defendants argue that the plaintiff is not qualified to receive job placements through the Union 158 office.  As a result, the defendant has proffered a legitimate non-retaliatory reason for its refusal to provide the plaintiff with job placements therefore satisfying the second step of the McDonnell Douglas test.

### c. Pretext for Retaliation

The burden shifts back to the plaintiff to establish that the defendant's reasons were pretext for discrimination.   McDonnell Douglas Corp., 411 U.S. at 798.  Here, the plaintiff argues that other male Union 1076 members—who are also apprentices and obtain similar books to that of the plaintiff—received job placements during the same time period that the defendant refused to provide job placements for Plaintiff Bliss.  (Hardy Aff. ¶ 11; Hillard Aff. ¶ 12). The plaintiff has proffered evidence that the defendants' legitimate nondiscriminatory reason

could be pretext for retaliation.  This evidence calls into question the defendants' intent, therefore raising an issue of material fact sufficient to preclude summary judgment.  Chipollini, 814 F.2d 893 at 899; see Sempier, 45 F.3d at 732-33. Because the plaintiff is questioning the defendants' stated reasons for its employment actions, the plaintiff's action cannot be resolved on summary judgment and must be reconciled by a jury.  Marzano, 91 F.3d at 509-510. Accordingly, the defendants' motion for summary judgment will be denied regarding Count 2.

### III.    Count 3: Claim for Punitive Damages

Finally, the defendants filed a motion for summary judgment seeking to dismiss the plaintiff's claim for punitive damages.  (Doc. 14).  Under the Civil Rights Act of 1991, punitive damages are limited to claims of intentional discrimination.  42 U.S.C.A. § 1981a(a)(1) (West).  In order for the plaintiff to recover punitive damages on an employment discrimination claim, the plaintiff must show that the defendants acted with "malice or . . . reckless indifference to the [plaintiff's] federally protected rights . . . ."  42 U.S.C.A. § 1981a(b)(1) (West). In order to prove that the defendants acted with "malice" or "reckless indifference", the plaintiff must show that they had knowledge that they may be acting in violation of federal law.  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 527 (1999).

Here, whether or not the defendants acted with "malice" or "reckless indifference" to the plaintiff's federal rights hinges upon a subjective analysis of the defendants' state of mind. Kolstad, 527 U.S. at 535. As a result, determining the defendants' intent or knowledge for its employment decisions is a task best relegated to the factfinder. Johnson v. Federal Exp. Corp., 996 F. Supp. 2d 302, 322 (M.D. Pa. 2014), aff'd, 604 F. App'x 183 (3d Cir. 2015); see also Harry v. City of Phila., No. CIV.A. 03-661, 2004 WL 1387319, at *16 n. 24 (E.D. Pa. June 18, 2004) (stating that because a plaintiff's claim for discrimination under Title VII will survive a motion for summary judgment, so too will the plaintiff's claim for punitive damages based on such a violation). A reasonable jury could find that the defendants acted with "malice" and "reckless indifference" when they refused to provide the plaintiff with job placements. At this stage, the plaintiff has presented enough evidence to warrant survival of her claim for punitive damages, and the defendants' motion on this count will be denied.

**Conclusion**

A reasonable jury could find that the defendants violated Title VII of the Civil Rights Act for refusing to provide the plaintiff with job placements and for retaliating against the plaintiff for opposing its decision. For the reasons set forth above, we will deny the defendants' motion for summary judgment. An appropriate order follows.

**Date: May 16, 2019**                    **BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**