**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARSHA M. BLISS,

Plaintiff,

v.

LABORERS INTERNATIONAL UNION OF NORTH AMERCIA LOCAL 158 and ROBERT SLICK, BUSINESS AGENT,

Defendants.

No. 3:17-CV-1837

(Judge Brann)

**MEMORANDUM OPINION**

**APRIL 29, 2020**

Presently before this Court is a second motion for summary judgment (Doc. 30) filed by Defendants Laborers International Union of North America ("LIUNA") Local 158 and Robert Slick, Business Agent ("Defendants"). Because material questions of fact exist, the motion will be denied.

## I. BACKGROUND[1]

Plaintiff Marsha Bliss ("Bliss") at all relevant times was a member of LIUNA Local 1076 out of Michigan. (Doc. 33-4, Pl.'s Aff. ¶ 2; Doc. 1, Compl. ¶ 13). Defendant LIUNA Local 158 is a labor union local dealing with, among other

[1] This case was reassigned to the undersigned following the death of the Honorable James M. Munley in March of 2020.

things, referring laborers to work in the pipeline construction industry in Northeastern Pennsylvania. (Doc. 1, Compl. 7). Defendant Robert Slick is Local 158's Business Agent. (Doc. 1, Compl. ¶ 8).

As a labor union, Defendant Local 158 received requests for laborers from employers in the pipeline construction business. The Local, through its Business Agent, would then refer members of LIUNA for the jobs. Plaintiff attempted to obtain pipeline construction work through Defendant LIUNA Local 158 as an "out-of-towner" or "traveler" as she belonged to a local out of Michigan. (Doc. 33- Pl.'s Aff. ¶ 3).

Bliss asserts that although initially Local 158 referred her for jobs, such referrals stopped being made in or about 2013. At the time she initially contacted Local 158, Ronald Tomasetti was its Business Agent. (Doc. 33, Pl.'s Aff. ¶ 3). In October 2011, Tomasetti referred Bliss to a job which lasted approximately one month. (*Id.* ¶ 7). In April 2012, Tomasetti referred Bliss to another job which ended in October 2012. (*Id.* ¶ 8). The next time Bliss contacted Local 158, it had a new business agent, Defendant Robert Slick. (*Id.* ¶ 10). Defendant Slick informed Bliss that as a "traveler" she would be placed on the "out-of-work" list and once all of his "guys" - that is Local 158 members - had jobs, he could then refer her. (*Id.*¶ 11). In August 2013, Defendant Slick referred Bliss to a job as a flagger for a company doing a pipeline job. (*Id.* ¶ 15). The job lasted

approximately seven weeks. (*Id.*) That was the last referral she received from Defendants. Bliss claims that from 2014 through 2017, she received no referrals although similarly situated male union members continued to receive referrals from Defendant Slick. (*Id.* ¶ 19).

Based upon these allegations,[2] Bliss filed the instant two-count employment discrimination complaint asserting causes of action for: Count 1 – Sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 and Count 2 – Retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (Doc. 1, Compl. ¶ ¶ 25-35). Plaintiff's complaint seeks both compensatory and punitive damages. (*Id.*, *Ad Damnum* Clause).

As noted above, this is Defendants' second motion for summary judgment (Doc. 30-31). Judge Munley previously denied summary judgment to the Defendants by Memorandum and Order in May 2019 (Doc. 24-25), but subsequently permitted the Defendants to renew this dispositive motion following the re-opening of discovery to further develop the case. (Doc. 26-29).

In accordance with the following reasoning, Defendants' motion for summary judgment will be denied.

---

[2] The facts will be addressed with greater specificity below where appropriate.

## II. LEGAL STANDARD

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)). To defeat a motion for summary judgment, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor. FED R. CIV. P. 56(a); *Liberty Lobby*, 477 U.S. at 249. When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (*quoting Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997)). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this 'is clearly a factual question,' *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 899 (3d Cir. 1987), summary judgment is in fact rarely appropriate in this type of case. Simply 'by

pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' *Id.* *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 732-33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." *Marzano v. Computer Science Corp*., 91 F.3d 497, 509-510 (3d Cir. 1996).

## III. DISCUSSION

Plaintiff's complaint asserts a claim for sex discrimination and a claim for retaliation. Plaintiff seeks compensatory and punitive damages. Defendants challenge all of Bliss's claims and also raise a statute of limitations issue. The Court will address each issue in turn.

### A. Count 1, sex discrimination, Title VII of the Civil Rights Act of 1964

Plaintiff's first cause of action is for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Doc. 1, Compl. ¶¶ 25-30). She asserts that she was treated less favorably as a female than similarly situated males with regard to job referrals from the defendants. (*Id.*) Bliss asserts that due to the discrimination she sustained lost earnings, severe emotional and psychological distress, lost self-esteem and lost future earning power. (*Id.* ¶ 29). Defendants again move for summary judgment on this count and argue that the

undisputed facts reveal that Bliss is not entitled to relief. The Court respectfully disagrees.

A plaintiff asserting an employment discrimination claim may establish a violation of the law in one of two ways. First, she may present direct evidence of discrimination. *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). If the plaintiff does not provide direct evidence of discrimination, as is the case here, she may proceed with indirect evidence under the *McDonnell Douglas* analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

In cases of indirect evidence, a plaintiff must first make a *prima facie* showing of discrimination. *Pivirotto v. Innovative Systems, Inc*.,191 F.3d 344, 352 n.4 (3d Cir. 1999). If the plaintiff cannot do so, the defendant is entitled to summary judgment. *Id.* If the plaintiff does establish a *prima facie* case, the defendant must produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once it does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason was pretextual and that unlawful discrimination was the real reason for the employment action. *Id.*

With regard to analyzing the plaintiff's burden at the final step: "the plaintiff can survive summary judgment only if she submits evidence from which a

factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Connors*, 160 F.3d at 974, n.2.

Accordingly, the first step in this case is to determine whether or not Bliss has established a *prima facie* case. A prima facie case consists of the following: (1) plaintiff was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and 4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's qualifications to fill the position. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The determination of whether a plaintiff has established a *prima facie* case is a question of law that a court must decide. The Supreme Court has explained that "[t]he burden in establishing a *prima facie* case of disparate treatment is not onerous." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2001) (quoting *Tex Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Here, Bliss has met all four elements of her *prima facie* case. It is uncontested that she has met the first element as she is female, a class explicitly protected by Title VII of the Civil Rights Act of 1964. Specifically, Title VII

makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

The second element that Bliss must establish is that she was qualified for the position. *Sarullo*, 352 F.3d at 797. It appears that for purposes of the *prima facie* case, she was qualified for the job referrals that she sought from the Defendants. She belonged to the LIUNA and even though she did not belong specifically to Defendant Local 158, it had authority to refer her as an "out-of-towner" or "traveler". She had received such referrals for pipeline work from Local 158 in 2011, 2012, and 2013. (Doc. 31-3, Pl.'s Depo. 9-11, 18; Defs.' Statement of Facts "SOF" ¶¶ 25, 29; Doc. 33 Pl's Response to SOF ¶¶ 25, 29).

The third element asks whether Bliss suffered an adverse employment action. *Sarullo*, 352 F.3d at 797. Here, it is undisputed that since 2013, Bliss received only one referral for pipeline employment. (Doc. 31-3, Pl.'s Dep. at 19). The failure of the Defendants to refer her for additional work is an adverse employment action.

Bliss has also established the fourth element of her *prima facie* case – that the adverse employment action occurred under circumstance which give rise to an inference of unlawful discrimination. *Sarullo*, 352 F.3d at 797. Bliss has

submitted evidence that men, who were similarly situated to her, received job referrals during the time when she was being passed over. (Doc. 33-6, Andrew Hillard Aff; Doc. 33-5, William Hardy Aff.).

Bliss has therefore established a *prima facie* case of employment discrimination based upon her sex, and the analysis shifts to whether or not the Defendants have provided legitimate non-discriminatory reasons for their actions. *Pivirotto*,191 F.3d at 352 n.4. They present several such reasons. Defendants claim the following: Plaintiff's union card was invalid; she did not put her name on the referral list after 2013; she was an apprentice and all jobs they had were for journeymen; and finally, the Defendant Local had to place its own members first before travelers.

Bliss can move the analysis to the next stage if she presents evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 974, n.2 (3d Cir. 1998). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the

asserted non-discriminatory reasons." *Fuentes v. Perski*, 32 F.3d 759, 765 (3d Cir. 1994) (emphasis in the original, quotation marks and citation omitted). The Court will discuss each of the Defendants' non-discriminatory reasons and the Bliss's response thereto.

**1. Plaintiff's Union Book**

Defendants first assert that Bliss's union book was invalid and improperly issued by a different local. (Doc. 31-1, Ronald Tomasetti Aff. ¶ 6; Doc. 31, Robert Slick Aff. ¶ 6). They do not argue, however, that this was the reason that Plaintiff was not referred for employment. In fact, Defendant Slick and the Local's initial Business Manager, Ronald Tomasetti, testified that Bliss's union book was not a factor in making pipeline referrals. (Doc. 33-1, Defendant Robert Slick Dep. at 53; Doc. 33-2, Defendant Ronald Tomasetti Dep. at 29). Accordingly, the fact that her union book may have been invalid is not a legitimate non-discriminatory reason for Defendants' actions toward Bliss.

**2. Plaintiff's name on referral list**

Next, Defendants claim that Bliss did not place her name on Local 158's referral list in any year after 2013. (Doc. 31-3, Pl. Dep. at 19). Evidently, their argument is that because her name was not on the referral list she was not referred. Plaintiff, however, indicates that she contacted Defendant Business Agent Slick on

a regular basis from 2014 through 2017 seeking referrals. (Doc. 33-4, Pl. Aff. ¶ ¶ 19, 24).

Defendants present no evidence that there was a formal referral list that Bliss had to continuously, or even yearly, use to sign up. Further, they present no evidence that her failure to sign up on the list, as opposed to making telephone requests for referrals, was improper or the reason that she obtained no referrals. The fact that Bliss did not place her name on a referral list in years since 2013 does not provide a legitimate non-discriminatory excuse for Defendants' failure to refer Plaintiff.

**3. Plaintiff's status as an apprentice**

Next, Defendants claim that the only referral requests that they had from employers were for journeymen, which is a step above Plaintiff's status as an apprentice. (Doc. 31-1, Ronald Tomasetti Aff. ¶¶ 7, 9; Doc. 31-2 Def. Robert Slick Aff. at ¶¶ 7, 9). Bliss points out, however, that two male comparators, William Hardy and Andrew Hillard, were also apprentices but continued to be referred for employment in the relevant timeframe. (Doc. 33-6, Hillard Aff. ¶ 11, Doc. 33-5, Hardy Aff. ¶ 11). Moreover, Defendant Slick and Ronald Tomasetti both testified that the union members classification as "apprentice" was irrelevant and not a consideration in making job referrals for pipeline work. (Doc. 33-1, Slick Dep. at 49; Doc. 33-2, Tomasetti Dep. at 30-32). Additionally, Bliss has

submitted requests from employers to the union for laborers which do not make any reference as to whether they should be apprentices or journeymen. (Doc. 33-3, Pl.'s Ex. C, Various Requests for Laborers). These forms also request assistance from the union in obtaining female participation. (*Id.*) Thus, Plaintiff has countered Defendants alleged non-discriminatory reason for failing to refer her.

**4. Plaintiff's status as a traveler**

Defendants further argue that Bliss's status as a "traveler"/"out of towner" as opposed to being a member of Local 158 affected her referrals. Defendants contend that they first referred members of Local 158, and subsequently only referred travelers, when all their local members who sought work were employed. During the relevant time period no referrals were made from the "out-of-town" list. (Doc. 31-2, Tomasetti Aff. ¶ 7, Doc. 31-1, Slick Aff. ¶ 7). In this instance, Bliss again points to Hardy and Hillard. They were both "travelers" and obtained referrals from Defendant Slick in the relevant timeframe. (Doc. 33-4, Pl. Bliss Aff. Ex D,¶ 19; Doc. 33-5, Hardy Aff. Ex. E, ¶¶ 13, 14, 17; Doc 33-6, Hillard Aff. ¶¶ 11, 12, 13, 16). Hardy and Hillard both encouraged Bliss to continue to seek pipeline referrals from Defendant Slick because they were members of LIUNA 1076 who were working in Local 158 jurisdictions and getting jobs referred from Slick along with other male members of Local 1076. (Doc. 33-5, Hardy Aff. ¶ 12; Doc. 33-6, Hillard Aff. ¶ 12).

Plaintiff has thus countered and revealed material questions of fact with regard to all of the Defendants' legitimate non-discriminatory reasons. She has also presented evidence as a genuine dispute of material fact that illegal sex discrimination was the true reason for the employment action in that the males similarly situated to her were treated differently. The application of the *McDonnell Douglas* burden shifting analysis therefore reveals that summary judgment for the Defendants on Plaintiff's first cause of action is inappropriate.

**B. Count II – Retaliation**

Plaintiff's second cause of action is for retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 against both Defendants. (Doc. 1, Compl. ¶¶ 31-35). Title VII prohibits an employer from "discriminat[ing] against any individual . . . because [she] has opposed any practice made an unlawful employment practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing…." 42 U.S.C. § 2000e-3(a). A plaintiff proves retaliation by demonstrating: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotation marks and citation omitted).

Here, Bliss alleges she "complained about sex discrimination both informally and formally to Defendant Robert Slick and was retaliated against for the complaints." (*Id.* ¶ 32). Defendants argue that the retaliation claim fails because the only retaliation Plaintiff claims is lack of referrals. Defendant relies on its arguments above that it had legitimate non-discriminatory reasons for failing to refer Bliss. According to the Defendants then, the retaliation claim must fail. As set forth above, however, material questions of fact exist as to whether Defendants failed to refer Bliss due to invidious discrimination. The Defendants' motion for summary judgment as to Count II, regarding retaliation, likewise lacks merit.

**C. Punitive damages**

Plaintiff seeks the imposition of punitive damages. (Doc. 1, *Ad Damnum* Clause ¶ (d) foll. ¶ 40). Defendants also seeks summary judgment on this claim. Defendants largely rely on their previous arguments that they did not discriminate, and thus punitive damages should not be imposed. As noted above, genuine issues of material fact exist as to whether or not Defendants discriminated against the Plaintiff. Thus, that basis for judgment on the punitive damages claim is without merit.

Defendants also argue "there was no evidence of reckless indifference or malice by refusals to place Plaintiff in a job, as there was no opportunity to place

her in a job without skipping over Local Union members." (Doc. 32, Defs.' Brief at 14). As this Court has found genuine issues of material fact with regard to Defendants' position, and as Defendants have presented no valid reason to be granted judgment on the punitive damages claim, their motion in this respect will be denied.

**D. Statute of limitations**

Lastly, Defendants argue that Bliss's claims are barred by the statute of limitations. Defendants present three sentences in their brief dealing with the statute of limitations; from these sentences it is difficult to discern the defense argument. Defendants appear to contend that Plaintiff was not on the referral list during 2014 through 2017 and no discrimination could have occurred in those years because Plaintiff had not placed herself on the list.

As I have previously found that Plaintiff has presented evidence that she sought referrals from 2014 through 2017,[3] Defendants' motion for summary judgment based upon a statute of limitations argument will also be denied.

---

[3] To the extent that we can analyze the issue based upon the record before us, it appears that plaintiff has met the statute of limitations. As a prerequisite to filing a civil action under Title VII for employment discrimination, a claimant must first file a complaint with the Equal Employment Opportunity Commission ("EEOC"). After review of the case, the EEOC may issue a "right to sue" letter to the claimant. The claimant has ninety days from the date of notice of the right to sue letter to file suit. 42 U.S.C § 2000e-5. Here plaintiff filed a charge of discrimination with the EEOC on or about March 20, 2015. (Doc. 1, Compl. ¶ 22). The EEOC issued a notice of right-to-sue on July 17, 2017 (*Id.* ¶ 23), and plaintiff filed the instant case within ninety days on October 6, 2019. (*Id.*)

## IV. CONCLUSION

Marsha Bliss has established genuine issues of material fact with regard to each of the proposed legitimate non-discriminatory reasons for the failure of the Defendants to refer her for work. For the same reasons, Defendants' motion for summary judgment on Plaintiff's retaliation and punitive damages claims lacks merit. Defendants have further provided no grounds upon which to grant summary judgment based upon the statute of limitations. The motion for summary judgment is therefore denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge