## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARSHA M. BLISS-MILLER,

               Plaintiff,

     v.

LABORERS INTERNATIONAL UNION
OF NORTH AMERICA LOCAL 158, et
al.,

               Defendants.

CIVIL ACTION NO. 3:17-CV-01837

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Marsha M. Bliss-Miller ("Bliss") initiated this action on October 6, 2017, against Laborers International Union of North America Local 158 ("Local 158") and Robert Slick (hereinafter collectively known as "Defendants") alleging claims of gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and retaliation under title 42 U.S.C. § 1981 and in violation of Title VII of the Civil Rights Act of 1964. (Doc. 1). Defendants filed their Answer to the Complaint on January 5, 2018. (Doc. 8). On November 29, 2018, Defendants moved for Summary Judgment, submitting that Bliss was not denied work based on her gender and was not treated differently than persons similarly situated to her. (Doc. 14, at 2). The Court denied Defendants' Motion for Summary Judgment on May 16, 2019, and stated that a reasonable jury could find that Defendants violated Title VII of the Civil Rights Act for refusing to provide Bliss with job placements and for retaliating against Bliss for opposing their decision. (Doc. 24; Doc. 25, at 14). Defendants moved for Summary Judgment again on January 17, 2020. (Doc. 30). The Court denied Defendants' Second Motion for Summary Judgment on April 29, 2020, stating that Bliss established

genuine issues of material fact with regard to each of the proposed legitimate non-discriminatory reasons for the failure of the Defendants to refer her for work and for her allegations of retaliation and punitive damages claims. (Doc. 35, at 16; Doc. 36). Following the disposition of the Motions for Summary Judgment, the parties consented to proceed before a United States Magistrate Judge. (Doc. 40).

A non-jury trial was conducted before Chief Magistrate Judge Mehalchick on March 25 and 26, 2021. Both parties were represented by counsel at trial, and both parties filed proposed findings of fact and conclusion of law following trial. (Doc. 68; Doc. 69). Based on these submissions, the Court has distilled two main issues requiring resolution; namely: (1) whether Defendants discriminated against Bliss based on her gender when they did not refer her for pipeline work; and (2) whether Defendants retaliated against Bliss after she filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") when Defendants did not refer her for pipeline work.

Having heard the testimony and reviewed all documentary evidence, the Court now enters the following Findings of Fact, Conclusions of Law, and Decision pursuant to Rule 52 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 52.

## FINDINGS OF FACT

The following findings of fact are based upon the stipulations of the parties,  as well as the testimony and evidence that the Court found credible as presented at trial.

1. Defendant Local 158 operates as a member's hiring hall that locates work for union members in eastern Pennsylvania. (Doc. 65, at 95, 150, Tr. of Trial, 95:21-22, 150:13-24, May 26, 2021).

2

2. Defendant Slick is a business agent and the president of Local 158. (Doc. 65, at 48, Tr. of Trial, 48:6-8, May 26, 2021).

3. Defendant Slick became a business agent for Local 158 in April 2013. (Doc. 65, at 48, Tr. of Trial, 48:11-12, May 26, 2021).

4. As a business agent for Local 158, Defendant Slick maintained Local 158's members' hiring hall list where he received calls for those seeking employment through union jobs and contacted those interested when jobs became available. (Doc. 65, at 141, 144 Tr. of Trial, 141:14-19, 144:14-21).

5. Witness Ronald Tomasetti is president of the district council of eastern Pennsylvania for the labor union. (Doc. 65, at 94, Tr. of Trial, 94:3-4, May 26, 2021).

6. Witness Tomasetti became a business agent for Local 158 in 2002 and the business manager for Local 158 in 2009. (Doc. 65, at 93, Tr. of Trial, 93:18-21, May 26, 2021).

7. Plaintiff Bliss is a female. (Doc. 64, at 63, Tr. of Trial, 63:15, 65:10-11, May 25, 2021).

8. Bliss acquired a union book from Local 1076, located in Pontiac, Michigan, and indicated this to both Witness Tomasetti and Defendant Slick. (Doc. 64, at 23, 27, 35, Tr. of Trial, 23:17-21, 27:7-9, 35:13-15, May 25, 2021).

9. Bliss was considered a "traveler" by Local 158 because she was not a union member of Local 158. Doc. 64, at 35, Tr. of Trial, 35:13-15, May 25, 2021).

10. Bliss has performed over 2,000 hours of pipeline work and received three different job referrals from Local 158. (Doc. 64, at 30-31, 32-33, 40, Tr. of Trial, 30:21-24, 31:7, 12-13, 32:16, 18, 23-25, 33:1-3, 5-12, 40:14-15, 65:10-11, May 25, 2021).

11. In 2011, jobs were plentiful in the pipeline industry in eastern Pennsylvania due to the construction of the Marcellus shale pipeline. (Doc. 65, at 96, 97, 111, Tr. of Trial, 96:2-8, 97:13-15, 111:20-22, May 26, 2021).

12. Bliss received her first job referral through Local 158 in October 2011, and reported to the job working as the "clean up crew" after a pipeline had been installed. (Doc. 64, at 30, 31, Tr. of Trial, 30:20-24, 31:7-19).

13. Bliss received her second job referral through Local 158 in April 2012, and reported to the job working in a variety of different positions including digging, setup, layout, and backfill crew. (Doc. 64, at 32-33, Tr. of Trial, 32:16, 18, 23-25, 33:1-3, 5-12, May 25, 2021).

14. Defendant Slick assumed Witness Tomasetti's position as the business agent in 2012. (Doc. 64, at 35, Tr. of Trial, 35:23-25, 36:1-2, May 25, 2021).

15. Bliss did not receive a job referral from Local 158 for 11 months, placing her out of work and disrupting her earning potential. (Doc. 64, at 38, 48, Tr. of Trial, 38:4, 48:10-12, May 25, 2021).

16. Bliss received her third, and last, job referral through Local 158 in August 2013, and reported to the job working as a "flagger." (Doc. 64, at 52, 53, Tr. of Trial, 52:15, 18-21, 53:17, May 25, 2021).

17. Bliss did not receive any more job referrals from Local 158 after her third job. This placed her out of work and disrupted her earning potential. (Doc. 64, at 53, Tr. of Trial, 53:17, May 25, 2021; Doc. 65, at 72, Tr. of Trial, 72:19-20).

18. Bliss filed a claim with the EEOC on April 1, 2015, and informed Defendant Slick of her filing sometime after the filing occurred. (Doc. 64, at 67, 85, 86, Tr. of Trial, 67:22-24, 85:13-15, 22-25, 86:1-7, May 25, 2021).

19. From 2013 to 2017, there were fewer union jobs available in the pipeline industry, partially because there was less work and partially because more non-union companies were acquiring jobs. (Doc. 65, at 49, 111-12, 113, Tr. of Trial, 49: 5-7, 111:20-25, 112:1-9, 113:2-8, May 26, 2021).

20. Defendants were unable to place as many union members in working positions as they did in the years prior to 2013, due to the decline in available work. (Doc. 65, at 112, 113, Tr. of Trial, 112:25, 113:1-17, May 26, 2021).

21. Witness Hillard originally acquired his union book from Local 1076. (Doc. 64, at 125, Tr. of Trial, 125:21-22, May 25, 2021).

22. Witness Hillard was considered a "traveler" by Local 158 because he was not a union member of Local 158. (Doc. 64, at 125, Tr. of Trial, 125:21-22, May 25, 2021).

23. Witness Hillard received at least two job referrals from Local 158. (Doc. 64, at 126, 129 Tr. of Trial, 126:19-20, 129:6-8, May 25, 2021).

24. Witness Hillard acquired other jobs on his own accord and not through reference by Local 158. (Doc. 64, at 130, 131, 152, Tr. of Trial, 130:9-15, 131:19, 152:6-10, May 25, 2021).

25. In 2017, Witness Hillard became a member of Local 158 after his membership with Local 1076 had lapsed and he needed a Local 158 union book to complete a job with a company at which he was currently employed. (Doc. 64, at 151, Tr. of Trial, 151:3-5, May 25, 2021; Doc. 65, at 20, 45, Tr. of Trial, 20:11-14, 45:10-12, May 26, 2021).

5

Witness Hillard was able to obtain his Local 158 membership, in part, because his membership had lapsed, and a person may not be a member of two local unions at the same time. (Doc. 65, at 95, Tr. of Trial, 95:8-9, (May 26, 2021).

26. Witness Hardy originally acquired his union book from Local 1076. (Doc. 65, at 6, Tr. of Trial, 6:12-13, May 26, 2021).

27. Witness Hardy was considered a "traveler" by Local 158 because he was not a union member of Local 158.  (Doc. 65, at 7-8, 12 Tr. of Trial, 7:24-25, 8:1, 12:8-12, May 26, 2021).

28. Witness Hardy received multiple referrals from Local 158. (Doc. 65, at 9, 11, 30, 31, 32, Tr. of Trial, 9:15-17, 11:4-5, 30:22-25, 31:1-2, 32:9-11, May 26, 2021).

29. Witness Hardy acquired other jobs on his own accord and not through reference by Local 158. (Doc. 65, at 13, 23, 30, 31, 33, Tr. of Trial, 13:10-13, 23:15-22, 30:12-21, 31:3-9, 20-21, 33:7-13, May 25, 2021).

30. In 2017, Witness Hardy acquired a job with the same company where Witness Hillard was employed. Witness Hillard informed Witness Hardy about the job, after which Witness Hardy was requested at the job. (Doc. 65, at 37, 38, Tr. of Trial, 37:15-16, 23-25, 38:1, May 26, 2021).

31. Local 158 utilizes a "travelers list" when prioritizing who receives referrals for different jobs. A "travelers list" consists of other union members who live in the area but are not members of Local 158. Local 158's system prioritizes members of Local 158 to receive job referrals before those that are placed on the "travelers list." Once every member of Local 158 has received a job placement, the business agent turns to the "travelers list." Unless the job requires a special set of qualifications, the business

agent utilizes the "travelers list" in sequential order of those who have called requesting to be on the list. (Doc. 64, at 39, 55, 126 Tr. of Trial, 39:8-9, 55:4-11, 22-24, 126:8-11, May 25, 2021; Doc. 65, at 7-8, 12, 109, 110, 150, 151, 154, Tr. of Trial, 7:24-25, 8:1-5, 12:8-12, 109:3-22, 110:9-12, 150:13-25, 151:1-3, 9-10, 14:8-9, May 26, 2021).

## CONCLUSIONS OF LAW

The Court has jurisdiction over the instant action under § 28 U.S.C. 1331. Venue is proper in this Court, as this suit has been brought in the district where Defendants conduct business and where a substantial part of the acts giving rise to the claims occurred. 28 U.S.C. §§ 1391(b)(1), 1391(b)(2).

Bliss submits that she was discriminated against by Defendants on the basis of her gender when Defendants did not provide her with jobs from Local 158. Additionally, Bliss claims that she was retaliated against when she filed a claim with the EEOC and brought the claim to Defendants' attention. Bliss also seeks punitive damages due to Defendants' discrimination and retaliation.

I. **GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

1. Under Title VII of the Civil Rights Act of 1964, "[i]t shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

2. Bliss contends that Defendants discriminated against her by refusing to refer her for work assignments because of her gender and gave other similarly situated males work assignments instead of Bliss.

7

3.  Under the burden-shifting framework set forth in *McDonnell,*

> (1) plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination.

> *Parker v. Verizon Pa.,* Inc., 309 F. App'x 551, 555 (3d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

A. *Prima facie* Case of Discrimination

4.  In order to establish a *prima facie* case of employment discrimination, a plaintiff must show

> that (1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.

> *See Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnel*, 411 U.S. at 802).

5.  "[T]he *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo,* 352 F.3d at 797-98 (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

6.  Females are considered members of a protected class. *See Vernon v. A & L Motors,* 381 F. App'x 164, 167 (3d. Cir. 2010) (the parties did not dispute that Plaintiff was a member of a protected class because she was female).

7.  "[B]y departing from a job posting's objective criteria in making an employment decision, an employer establishes different qualifications against which an employee or applicant should be measured for the position." *Scheidemantle v.*

*Slippery Rock U. St. Sys. of Higher Educ.,* 470 F.3d 535, 540 (3d Cir. 2006) (examining *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005)).

8. "[C]ourts should look to the hiring decision to determine if the plaintiff was at least qualified" for the position. *Slipper Rock*, 470 F.3d at 541 (examining *Pickney v. Cty. Of Northampton*, 512 F. Supp. 989, 998 (E.D. Pa. 1981), *aff'd*, 681 F.2d 808 (3d Cir. 1982).

9. "[A]n adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Torres v. Deblasis,* 959 F. Supp. 2d 772, 780 (E.D. Pa. Aug. 2, 2013) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999).

10. In addition, "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in . . . her working conditions," such an act is an adverse employment action. *Torres, 959 F. Supp. 2d at 780* (quoting *Durham, 166 F.3d at 153*)

11. First, Bliss is a member of a protected class because she is female.

12. Second, Bliss demonstrated that she was qualified to receive work from Local 158. Although Bliss was not a member of Local 158, she established that she was qualified to perform the duties of a member of Local 158 due to her previous experiences in pipeline work. Additionally, she demonstrated that it was possible for her to receive work under Local 158 because she had been hired by Local 158 for work in the past.

13. Third, Bliss established that she was subject to an adverse employment action despite being qualified. Bliss had a substantial decrease in earning potential and she did not receive jobs for an eleven (11) month period in 2012 to 2013 and between 2014 to 2017, causing a disruption in her working conditions.

14. However, Bliss did not establish that Defendants continued to seek out individuals with qualifications similar to hers to fill the pipeline positions. Bliss was not a member of Local 158 and was considered a "traveler" by Defendants. Defendants explained their use of a "travelers list" as a commonplace practice in their method of employing union members in which they would go in sequential order down the list and call each name. The witnesses were not members of Local 158, at the relevant times, and had qualifications similar to Bliss. The witnesses had explanations as to why they were employed at the time Bliss was not. The witnesses established their ability to receive pipeline work through alternate channels of employment other than references from Local 158. These explanations differ from how Bliss sought to obtain work through Local 158. Therefore, Bliss has not proved by a preponderance of the evidence that union members who were not members of Local 158 were receiving employment through Local 158 when she was not receiving referrals.

B. Legitimate Non-Discriminatory Reason

15. Even if Bliss had met her burden in establishing a *prima facie* case of discrimination, Defendants established a non-discriminatory reason as to why the adverse employment action occurred.

10

16. "[T]he defendant's burden at this stage is relatively light and . . . it is satisfied if the defendant articulates a legitimate reason for the adverse employment action." *Johnson v. Keebler-Sunshine Biscuits, Inc.,* 214 F. App'x 239, 242 (3d Cir. 2007) (examining *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir. 1997)).

17. Defendants established a legitimate reason as to why Bliss was not employed at the times stated. Defendants offered evidence that the pipeline industry was prolific when Bliss was first hired. Defendants explained that there was a sharp decline in jobs, with many pipeline workers finding it difficult to find jobs. Defendants described their use of the "travelers list" and that they routinely gave available positions to those that were members of Local 158 and then looked to the "travelers list" to fill positions. Defendants testified that this is what occurred between the years of 2013 to 2017 when Bliss was not receiving work assignments from Defendants. Defendants' explanation as to the amount of work available at the time and the system of hiring Local 158 members ahead of "travelers" demonstrates a legitimate reason for Bliss's unemployment

C. Pretext for Discrimination

18. Since Defendants have demonstrated a non-discriminatory reason as to why Bliss suffered an adverse employment action, the burden now shifts to Bliss to demonstrate that such proffered reason was a pretext for true discriminatory conduct.

19. A plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action."
*Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir. 2006) (internal quotations
omitted); *see also Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994).

20. Bliss has not demonstrated evidence establishing disbelief in Defendants' motive
or that a discriminatory reason was more likely than not the reason for Defendants'
actions. Contrary to Bliss's assertions, the witnesses corroborated Defendants'
reasoning by explaining that they did not receive work through Local 158, that
they sought employment through other avenues rather than calling Local 158, and
that they received the same information from Defendants about being placed on
the "travelers list" as Bliss. Thus, Bliss has not produced sufficient evidence of
discrimination on behalf of Defendants.

## II. RETALIATION UNDER 42 U.S.C. § 1981 AND IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

21. Under Title VII, "[i]t shall be unlawful employment practice for an employer to
discriminate against any of his [or her] employees . . . , because he [or she] has
opposed any practice made an unlawful employment practice by this subchapter."
42 U.S.C. § 2000e-3(a).

22. Bliss contends that Defendants retaliated against her by not providing her with job
referrals when she complained about gender discrimination both informally and
formally to Defendant Slick.

23. The burden-shifting approach entails that: (1) plaintiff bears the burden of
establishing a *prima facie* case of retaliation; (2) the burden of production then shifts
to defendant to articulate a legitimate, non-retaliatory reason for the action; and
(3) if defendant meets its burden of production, plaintiff must prove, "by a

12

preponderance of the evidence,' that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Culler v. Shinseki,* 840 F. Supp. 2d 838, 845 (3d Cir. 2011) (quoting *Moore v. City of Phila.,* 461 F.3d 331 (3d Cir. 2006); *see also Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500-05 (3d Cir. 1997)).

A. *Prima Facie* Case of Retaliation

24. In order to establish a *prima facie* case of retaliation, a plaintiff must show (1) that she engaged in a protected employee activity; (2) that an adverse employment action was taken against her either subsequent to or contemporaneous with the protected activity; (3) that there was a causal link between the protected activity and the adverse employment action. *Culler,* 840 F. Supp. 2d at 846 (quoting *Andreoli v. Gates,* 482 F.3d 641, 649 (3d Cir. 2007)).

25. Filing a complaint with the EEOC is a statutorily protected action. *See McGee v. Procter & Gamble Distrib. Co.,* 445 F. Supp. 2d 481, 490 (E.D. Pa. 2006) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003); *see also Culler,* 840 F. Supp. 2d, at 846; *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

26. Complaining about a discriminatory or harassing behavior to a supervisor is a protected action. *Andreoli,* 482 F.3d at 650.

27. In order to demonstrate that an adverse employment action was taken subsequently or contemporaneously with the protected action, the plaintiff must show that "the employer's action was 'materially adverse' in that it 'might well have dissuaded a reasonable worker from making or supporting a charge of

discrimination'" *Culler*, 840 F. Supp. 2d at 846 (quoting *Moore*, 461 F.3d at 342 (internal citations omitted)).

28. "Whether an action is materially adverse 'depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Culler*, 840 F. Supp. 2d at 846.

29. A "plaintiff must show that the adverse action was motivated by 'retaliatory animus.'" *Culler*, 840 F. Supp. 2d at 846 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

30. There are "two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Paterson C. of N.J.,* 260 F.3d 265 (3d Cir. 2001) (citing *Farrell*, 206 F.3d at 281).

31. Bliss engaged in a protected employee activity by filing an EEOC Complaint on April 1, 2015, and informally complaining to Defendant Slick. Additionally, Bliss was not receiving referral for jobs through Local 158 at the same time as her formal and informal complaint. Failing to receive work could dissuade "a reasonable person in the plaintiff's position" from filing a claim.

32. However, Bliss has not demonstrated a causal link between her formal and informal complaints and her lack of job referrals from Local 158. There is no evidence of a "retaliatory animus" because Local 158 did not change their actions upon their knowledge of Bliss's complaints. Bliss did not receive referrals for positions before she filed the EEOC complaint and brought awareness to Defendant Bliss. There is no temporal proximity between the actions.

14

Additionally, Bliss has failed to demonstrate ongoing antagonism because she has not provided evidence that Defendants' actions were motivated by anything other than a lack of employment opportunities and a "travelers list" system.

B. Legitimate Non-Retaliatory Reason

33. Even if Bliss had established a *prima facie* case of retaliation, Defendants have "come forth with evidence indicating that the actions taken against [Bliss] were for legitimate, non-retaliatory reasons." *See Culler*, 840 F. Supp. 2d at 850.

34. Defendants have demonstrated a legitimate reason as to why Bliss was not employed after she formally and informally complained of her treatment from Defendants. Defendants proffered evidence that the pipeline industry was prolific when Bliss was first hired and that there was a sharp decline in jobs, with many pipeline workers finding it difficult to find jobs. Defendants described their use of the "travelers list" and that they routinely gave available positions to those that were members of Local 158 and then looked to the "travelers list" to fill positions. Defendants reasoned that this is what occurred between the years of 2013 to 2017, when Bliss was not receiving work assignments from Defendants. Thus, Defendants' explanation of the amount of work available at the time and the system of hiring Local 158 utilizes demonstrates a legitimate reason for Bliss's unemployment after her formal and informal complaints.

C. Pretext for Retaliation

35. Because Defendants have demonstrated a legitimate, nonretaliatory reason, the burden shifts again to Bliss to demonstrate that such reason was a pretext for retaliation.

15

36. A plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated, legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a motivating or determinate cause of the employer's actions." *Culler,* 840 F. Supp. 2d at 850 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

37. Bliss has not demonstrated evidence establishing disbelief in Defendants' motive or that a retaliatory reason was more likely than not the reason for Defendants' actions. Contrary to Bliss's assertions, the witnesses corroborated Defendants' reasoning by explaining how they received employment through other avenues other than that of referral from Local 158 after 2015. Thus, Bliss has not produced sufficient evidence of retaliation on behalf of Defendants.

## III.   PUNITIVE DAMAGES

38. "As provided in 42 U.S.C. § 1981a(b)(1), '[a] complaining party may recover punitive damages . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Le v. U. of Pa.,* 321 F.3d 403, 409 n. 4 (3d Cir. 2003) (alterations in original); *see also Mangan v. Commonwealth Med. C.,* No. 3:11-cv-2277, 2012 WL 2018270, at *3 (M.D. Pa. June 5, 2012).

39. Bliss contends that she is entitled to punitive damages because she has suffered from discrimination and retaliation on behalf of Defendants.

40. Punitive damages are "based upon a higher standard" than that of compensatory damages. *See Mangan,* 2012 WL 2018270, at *3. ". . . § 1981a(b)(1) requires

plaintiffs to make an additional demonstration of their eligibility for punitive damages." *Kolstad v. Am. Dental Assoc.,* 527 U.S. 526, 534 (1999) (internal quotations and alterations omitted).

41. Because the Court finds that Bliss has failed to establish that Defendants engaged in a discriminatory or retaliatory practice, the Court find that Bliss is not entitled to punitive damages under 42 U.S.C. § 1981a(b)(1).

## CONCLUSION

For the foregoing reasons, this Court concludes that Defendants did not discriminate or retaliate against Bliss under 42 U.S.C. § 1981 or in violation of Title VII of the Civil Rights Act of 1964. Accordingly, Bliss is not entitled to recovery. Based upon the foregoing findings of fact and conclusions of law, it is ordered that this matter shall be dismissed with judgment in favor of the Defendants.

An appropriate Order shall follow.


BY THE COURT:

Dated: September 29, 2021                    s/ Karoline Mehalchick
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**